UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------- x
MILTON CAMPBELL, :
 :
                    Plaintiff, :
 : **RULING ON MOTION**
    -against- : **FOR SUMMARY**
 : **JUDGMENT**
FRANCESCO LUPIS, :
 : 22-CV-1654 (VDO)
                Defendant. :
-------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

      Plaintiff Milton Campbell, a sentenced inmate incarcerated at MacDougall-Walker Correctional Institution ("MacDougall") in Suffield, Connecticut, brings this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983. Plaintiff contends that the defendant, Dr. Lupis, was deliberately indifferent to his serious medical needs. He seeks damages and injunctive relief in the form of an order that he be treated by a different doctor. Defendant has filed a Motion for Summary Judgment. For the following reasons, Defendant's Motion is granted.

## I.   FACTS[1]

Plaintiff was confined at MacDougall during the time relevant to this action, December 2021 through October 2022.[2] Def.s' Local Rule 56(a)1 Stmt., Doc. No. 25-2, ¶¶ 6, 8.

Dr. Lupis is assigned to MacDougall where he provides generalized medical care to inmates with a focus on chronic illnesses including diabetes types 1 and 2. *Id.* ¶ 18. He has treated Plaintiff for hypertension, chronic lumbar back pain, joint pain in his left hand, elevated creatinine, and type 2 diabetes which is controlled with renal complications. *Id.* ¶ 19.

Inmates with diabetes are treated according to community standards with diet and insulin or insulin alone. *Id.* ¶ 20. Type 2 diabetes is a chronic disease characterized by high levels of blood sugar. *Id.* ¶ 21. It is more common that Type 1 diabetes which also is characterized by high blood sugar levels. *Id.* Diabetes is routinely evaluated by several laboratory tests. *Id.* ¶ 22.

---

[1] The facts are taken from the parties' Local Rule 56(a) Statements and supporting exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3.

Defendant informed the plaintiff of this requirement. *See* Notice to Self-Represented Litigant Concerning Motion for Summary Judgment as required by Local Rule of Civil Procedure 56(b) Doc. No. 25-9. Although Plaintiff filed a Local Rule 56(a)2 Statement, he has not provided a citation to admissible evidence in support of each denial.

The fact that the plaintiff is unrepresented does not excuse him from complying with the court's procedural and substantive rules. *See Evans v. Kirkpatrick*, No. 08-CV-6358T, 2013 WL 638735, at *1 (W.D.N.Y. Feb. 20, 2013) (citing *Treistman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)); *see also Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 214 (N.D.N.Y. 2008) ("when a plaintiff is proceeding *pro se*, 'all normal rules of pleading are not absolutely suspended" (citation omitted). Thus, the defendants' facts, where supported by evidence of record and not contradicted by admissible evidence provided by the plaintiff, are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1, or in the Court imposing sanctions....").

[2] Plaintiff disputes this fact, stating in his declaration that he was transferred to Carl Robinson Correctional Institution and back to MacDougall. Plaintiff provides no date for this transfer, stating only that it occurred recently. However, the declaration is dated January 5, 2023 but was not signed until January 3, 2024 and filed the following day. Thus, the Court cannot discern when the transfer may have occurred. Regardless, Defendants have submitted a copy of Plaintiff's RT67 Movement History which shows that, except for a brief hospital stay, Plaintiff was confined at MacDougall from November 2009 through September 14, 2023, the date of the report. *See* Def.s' Mem. Attachment B, Decl. of Michelle DeVeau, Ex. A, Doc. No. 25-3 at 6. As Plaintiff does not argue that he was not confined at MacDougall during the time relevant to his claims, his objection is immaterial.

Diabetes is a lifelong illness. *Id.* ¶ 23. Type 1 diabetes is caused by an autoimmune reaction that destroys the insulin-producing cells in the pancreas. *Id.* ¶ 29. It develops early in life and is treated with lifelong insulin injections. *Id.* ¶¶ 30-31. Type 2 diabetes is caused by insulin resistance which reduces the effectiveness of insulin. *Id.* ¶ 29. It develops later in life and can be managed with oral medications, diet and exercise, and sometimes insulin. *Id.* ¶¶ 30-31.

Treatment for type 2 diabetes usually begins with weight reduction through diet and exercise. *Id.* For some people, aggressive weight loss, exercise, and a healthy diet are not sufficient to control type 2 diabetes. *Id.* ¶ 25. In this case, medications also are prescribed to control blood sugar levels. *Id.* Often, both short-acting and long-acting insulin are prescribed. *Id.* ¶ 26. A troubling side effect of insulin is low blood sugar which can cause sudden weakness, sweating, and unclear thinking. *Id.* ¶ 27. Persons with type 2 diabetes also frequently take medications to reduce the risk or slow the onset of complications of diabetes, such as kidney disease, low cholesterol, and low blood pressure. *Id.* ¶ 28.

Plaintiff has been prescribed three types of insulin, Novolin R, a man-made insulin structurally identical to the insulin produced by the pancreas, Humulin R, an intermediate-acting insulin, and Lantus, a long-acting insulin. *Id.* ¶¶ 39-41. He has been prescribed acetaminophen, or Tylenol, for pain. *Id.* ¶ 42. He has never been prescribed ibuprofen for pain as this medication can cause kidney damage. *Id.* ¶¶ 42-43.

In October 2021, Plaintiff weighed 139 pounds. *Id.* ¶ 46. In November 2021, he weighed 131 pounds. Doc. No. 26 at 1379. [3] In December 2021, Dr. Lupis noted that Plaintiff's blood

---

[3] The page numbers cited in this ruling regarding any documents that have been electronically filed refer to the page numbers imprinted by the electronic case filing system on the header of the documents and not to the page numbers on the original documents, if any.

sugar levels were controlled with his diet and were within normal range. Doc. No. 25-2 ¶ 44. Exercising his professional judgment, Dr. Lupis discontinued Plaintiff's insulin injections. *Id.* During this time, Plaintiff continued to be monitored for kidney disease, blood pressure, and weight. *Id.* ¶ 45.

On February 13, 2022, Plaintiff reported to the medical unit complaining of frequent urination and weight loss. *Id.* ¶ 47. He weighed 112.1 pounds. *Id.* ¶ 48. Dr. Lupis reinstated Plaintiff's insulin the same day. *Id.* ¶ 49. Because of the poor results without insulin, Dr. Lupis suspected that Plaintiff might have type 1 diabetes and not type 2. *Id.* ¶ 50. He continued to monitor Plaintiff's daily blood sugar levels and blood pressure and noted that both were normal. *Id.*

In June 2022, Dr. Lupis ordered tests to determine whether Plaintiff had been properly diagnosed as a type 2 diabetic. *Id.* ¶ 51. The test results showed a diagnosis of type 1 diabetes and Dr. Lupis adjusted Plaintiff's medication. *Id.*

Chronic kidney disease is monitored by the medical staff and specialists at UConn Health Center. *Id.* ¶ 54.

On August 23, 2022, Plaintiff complained to a nurse of dizziness and was brought to the medical unit. *Id.* ¶ 57. He also stated that he thought he was vomiting blood, but tests showed that he had vomited his dinner. *Id.* ¶ 58 & Doc. No. 26 at 611. Plaintiff reported to medical staff that he had been maintaining hydration as previously ordered by Dr. Lupis. *Id.* The nurse notified Dr. Lupis who ordered that Plaintiff be taken to the emergency room at UConn Health Center for further evaluation and care. Docs. No. 25-2 ¶ 58 & 26 at 612.

At the hospital, testing revealed a duodenal ulcer which was cauterized. Doc. No. 25-2 ¶ 61. The medical providers at UConn discontinued the Lisinopril prescription. *Id.*

On August 29, 2022, Dr. Lupis discontinued the prescription for Metoprolol but re-prescribed Lisinopril for kidney function. *Id.* ¶ 62.

Department of Correction records show that Plaintiff filed three health services administrative remedies ("HSAR") during the relevant time period. Two, HSAR 137-1606-22 and HSAR 137-2753-22, were rejected and never corrected and resubmitted, while the third, HSAR 137-1793-22, was denied. *Id.* ¶ 14 & Doc. No. 26 at 1432.

## II.   LEGAL STANDARD

A Motion for Summary Judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense …." *Giordano v. Market Am., Inc*., 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its Motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson*

*v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a Motion for Summary Judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported Motion for Summary Judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## III.   **DISCUSSION**

Plaintiff asserts two claims against Dr. Lupis for deliberate indifference to his serious medical needs. First, he contends that Dr. Lupis discontinued his insulin for three months without performing any blood tests. Second, Plaintiff argues that a surgeon told him that Dr. Lupis had prescribed him incorrect medications to treat hypertension. He seeks damages and injunctive relief on his claims.

Dr. Lupis moves for summary judgment on four grounds: (1) Plaintiff failed to exhaust his administrative remedies on his claim that Dr. Lupis prescribed incorrect hypertension medication, (2) there is no genuine dispute as to any material facts; (3) Dr. Lupis is protected by qualified immunity; and (4) injunctive relief is not warranted in this case.

### A.      **Exhaustion of Administrative Remedies**

Defendant first argues that Plaintiff failed to properly exhaust his administrative remedies on the claim that Defendant prescribed the wrong medication.

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies *before* a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by ... making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"); *Timmons v. Schriro*, No. 14-CV-6606 RJS, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("The law is well-settled that informal means of communicating and pursuing a grievance, even

with senior prison officials, are not sufficient under the PLRA.").

The Supreme Court has held that the requirement for proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *Jones*, 549 U.S. at 217-18 (citing *Woodford*, 548 U.S. at 93-95). In addition, exhaustion of administrative remedies must be completed before the inmate files suit. *Baez v. Kahanowicz*, 278 F. App'x 27, 29 (2d Cir. 2008). Completing the exhaustion process after the complaint is filed does not satisfy the exhaustion requirement. *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001).

Special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation marks and internal citations omitted).

The *Ross* Court identifies three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643-44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643. The Second Circuit has noted that "the three circumstances discussed

in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the court is guided by these illustrations. *See Mena v. City of New York*, No. 13-CV-2430(RJS), 2016 WL 3948100, at \*4 (S.D.N.Y. July 19, 2016).

Exhaustion of administrative remedies is an affirmative defense. Thus, the defendants bear the burden of proof. *See Jones*, 549 U.S. at 216. Once the defendants establish that administrative remedies were not exhausted before the inmate commenced the action, the plaintiff must establish that administrative remedy procedures were not available to him under *Ross*, or present evidence showing that he did exhaust his administrative remedies. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) ("once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability").

Exhaustion of claims regarding medical needs is governed by Department of Correction Administrative Directive 8.9. *See* Def.s' Mem. Attachment C, Ex. 1, Doc. No. 25-4 at 6-14. There are two types of HSARs. A diagnosis and treatment remedy seeks "review of diagnosis or treatment decision made by a physician, psychiatrist, advanced practice registered nurse (APRN), physician assistant (PA), physician assistant-certified (PA-C), or dentist...." Dir. 8.9(6)(a)(i). An administrative issue remedy seeks "review of a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider." Dir. 8.9(6)(a)(ii).

The relevant procedures are as follows. Upon receipt, the HSAR is reviewed for compliance with the provisions in Directive 8.9. If the request is not in compliance, it is rejected.

*See* Dir. 8.9(6)(b)(i). The inmate is afforded five calendar days to correct the procedural deficiency and refile the HSAR. *See* Dir. 8.9(6)(c)(ii)(2)(a)(i)(1). Before filing an HSAR, the inmate must attempt to seek informal resolution. *See* Dir. 8.9(6)(b)(ii)(1). The inmate may first try to resolve the issue verbally with the appropriate staff member. *See* Dir. 8.9(6)(b)(ii)(2). If verbal communication is unsuccessful in resolving the issue, the inmate must submit a written request on form CN 9601 to the appropriate staff member. *See* Dir. 8.9(6)(b)(ii)(3-4). The inmate will be provided a response within fifteen business days after receipt of the written request. *See* Dir. 8.9(60(b)(ii)(7).

If the inmate is not satisfied with the response to the written request, he may file an HSAR. *See* Dir. 8.9(6)(b)(iii)(1). The completed HSAR Level 1, form CN 8901, must include a copy of the CN 9601 request form or explain why the form is not attached. *See*. Dir. 8.9(6)(b)(iii)(2). The CN 8901 form must be deposited in the HSAR box in the housing unit. *See* Dir. 8.9(6)(b)(iii)(3). The HSAR Level 1 must be filed within thirty calendar days of the occurrence or discovery of the cause or reason for the request for HSAR. *See* Dir. 8.9(6)(b)(iii)(4).

For a diagnosis and treatment remedy, the inmate "shall concisely explain the specific diagnosis or treatment decision and specify the date of diagnosis or treatment. The inmate shall explain how he or she is dissatisfied with the diagnosis and treatment, how he or she has been affected, and concisely state the resolution desired." Dir. 8.9(6)(c)(i)(1). Upon receipt of a diagnosis and treatment remedy, the HSAR Coordinator ("HSARC") consults the provider who made the decision to determine what action, if any, should be taken. *See* Dir. 8.9(6)(c)(i)(2)(a). If the provider decides that the existing diagnosis or treatment is appropriate, the remedy is denied and may not be appealed. *See id.* If the provider decides that further evaluation is needed,

he may schedule a health services review appointment. *See* Dir. 8.9)6)(c)(i)(2)(b).

The Level 1 decision on an administrative issue HSAR is made by the HSARC in consultation with appropriate health care supervisors. See Dir. 8.9(6)(c)(ii)(2). If the HSAR is in compliance, it will be processed. If it is not in compliance, it will be rejected and, if correction is possible, the inmate will be afforded five days to correct the defect and resubmit the HSAR. *See* Dir. 8.9(6)(c)(ii)(2)(a)(i). The decision on a Level 1 administrative issue HSAR will be provided in writing. *See* Dir. 8.9(6)(c)(ii)(4). If the inmate is not satisfied with the response or has not received a response within thirty business days, the inmate may file a Level 2 appeal on form CN 8902. *See* Dir. 8.9(6)(c)(ii)(4)(a) & (iii)(1).

The Regional Chief Operating Officer ("RCOO") will respond to the Level 2 HSAR within thirty business days. *See* Dir. 8.9(6)(c)(iii)(2-3). This is the final level of review unless the inmate does not receive a timely response from the RCOO. *See* Dir. 8.9(6)(c)(iii)(5) & (4)(a). If the inmate failed to receive a response to his CN 8902 or his issue challenges department-level policy or the integrity of the Health Services Administrative Remedy Procedure, the inmate may file a Level 3 appeal on form CN 8903. *See* Dir. 8.9(6)(c)(iv)(1).

Plaintiff appended to his Complaint copies of two Level 1 HSARs, 137-1606-22 which was denied and 137-2753-22 which was rejected, along with Level 2 and Level 3 appeals of 137-2753-22. Thus, administrative remedies were clearly available to him.

HSAR 137-2753-22 concerns the medication prescription. The Level 1 HSAR is dated September 21, 2022, thirty days after the doctor at UConn allegedly determined that Plaintiff was given the incorrect medication. *See* Doc. No. 1 at 15. The HSAR was rejected on October 8, 2022 because Plaintiff failed to attach the required CN 9601 form. The rejection directed Plaintiff to try to resolve the issued by writing to the RCOO before refiling. *Id.* at 16.

Under the HSAR procedures, Plaintiff had five days to contact the RCOO and refile his HSAR. In opposition, Plaintiff states that he did write to the RCOO and refers the Court to his exhibit 2. *See* Pl.'s Decl., Doc. No. 39-2 ¶ 38. Plaintiff did not, however, attach any exhibits to his declaration and the only Inmate Requests submitted with his opposition papers are directed to Dr. Lupis and are dated December 25, 2021, December 27, 2021, January 22, 2022, and February 12, 2022, all well before he discovered the alleges incorrect prescription. *See* Pl.'s Mem., Doc. No. 39-1. Thus, there is no evidence showing that Plaintiff complied with the procedural requirements to exhaust his administrative remedies on his claim for being prescribed incorrect medication.

Plaintiff also refers the Court to the copies of the Level 2 and Level 3 HSARs attached to his Complaint and argues that he cannot be responsible if the grievance coordinator failed to properly maintain filed documents. These are labeled his own copies and do not include any indicia that they were filed. Further, the Level 2 HSAR is dated and signed on February 12, 2022, but includes the claim of incorrect medication which he did not discover until August 2022. Thus, Plaintiff could not have filed this document to exhaust his administrative remedies on the incorrect medication claim.

Defendant's Motion for Summary Judgment is granted on the claim of deliberate indifference to medical needs for prescribing an incorrect medication on the ground that Plaintiff failed to properly exhaust his administrative remedies on this claim.

**B.      Deliberate Indifference to Serious Medical Needs**

The final claim is that Dr. Lupis improperly discontinued Plaintiff's insulin prescription for three months, from December 2021 to February 2022. Actually, the insulin was discontinued

for two months, from December 16, 2021 until February 13, 2022. *See* Doc. No. 26 at 1431-32, 1376.

To prevail, Plaintiff must present evidence "showing the offending official's 'deliberate indifference to [his] serious medical needs.'" *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). There are two elements to a claim for deliberate indifference to medical needs. The first element is objective. The inmate must "show that he was 'actually deprived of adequate medical care' by an official's failure 'to take reasonable measures in response to a [sufficiently serious] medical condition.'" *Id.* (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (internal quotation marks omitted)). Establishing an objectively serious deprivation requires the court to make two separate inquiries. First, the court must determine whether the inmate "was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. The medical providers are only required to have "act[ed] reasonably." *Id.* The second inquiry requires the court to determine "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280. Thus, although the objective element sometimes is referred to as the seriousness of the medical need, that is only one factor evaluated in determining the seriousness of the deprivation of medical care. *See id.*

If the claim is for denial of any treatment, the court will consider "whether the inmate's medical condition is sufficiently serious." *Id.* A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious,

but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

If, however, the claim is for a delay in treatment, the court focuses on the challenged delay rather than merely on the underlying medical condition to determine whether the alleged deprivation is sufficiently serious. The court considers "the seriousness of the particular risk of harm that resulted from 'the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Bellotto v. County of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007) (quoting *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)). "A delay in treatment does not violate the constitution unless it involved an act or failure to act that evinces "a conscious disregard of a substantial risk of serious harm." *Rodriguez v. Doe*, No. 3:22-CV-763(MPS), 2023 WL 184253, at *3 (D. Conn. Jan. 13, 2023) (citations and internal quotation marks omitted).

The second element is subjective. The inmate must present evidence showing "that the official acted with a culpable state of mind of 'subjective recklessness,' such that the official knew of and consciously disregarded 'an excessive risk to inmate health or safety.'" *Wolf*, 832 F. App'x at 92 (citations omitted). Negligence or medical malpractice is insufficient to support an Eighth Amendment deliberate indifference claim. *Id.* (citing *Hathaway v. Coughlin*, 99 F.3d

550, 553 (2d Cir. 1996)); *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("mere negligence' is insufficient to state a claim for deliberate indifference). Thus, for a claim based on delay of treatment, the inmate must show that the defendant "delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition for several days, or delayed major surgery." *Myrie v. Calvo*, 615 F. Supp. 2d 246, 248 (S.D.N.Y. 2009) (citation omitted); *see also Stewart v. City of New York*, No. 15-CV-4335, 2018 WL 1633819, at *8-9 (S.D.N.Y. Mar. 31, 2018) (dismissing deliberate indifference claim where plaintiff did not allege that the defendant "acted intentionally to delay the provision of medical treatment in a way that subjected [the plaintiff] to an excessive risk of harm"); *Bell v. Jendell*, 980 F. Supp. 2d 555, 562 (S.D.N.Y. 2013) (allegation of delay in provision of medical treatment without allegation that delay was intentional or reckless is insufficient to support Eighth Amendment deliberate indifference claim) (collecting cases).

As Plaintiff states that Dr. Lupis discontinued his insulin injections for two months and then restarted the injections, his claim is for a delay in treatment. Defendant does not contest the first element, conceding that Plaintiff had a serious medical need. Thus, the Court focuses on the subjective component of the deliberate indifference test and considers whether Plaintiff has presented evidence creating a genuine issue that Dr. Lupis delayed his care intentionally as a form of punishment.

Dr. Lupis denied Plaintiff's HSAR for discontinuing insulin stating that, at the time insulin was discontinued, Plaintiff's A1c levels were controlled by his diet alone. Dr. Lupis noted that when tests showed an increase in glucose levels, the insulin was restarted, and Plaintiff continues to be monitored. *See* Doc. No. 1 at 11. These statements are supported by Plaintiff's medical records.

On December 27, 2021, Plaintiff submitted an Inmate Request to Dr. Lupis asking to have the insulin injections restored and his morning blood sugar tests resume. He did not indicate that he was experiencing any ill-effects. Dr. Lupis responded that his blood sugar levels were well-controlled on oral medication only. Doc. No. 26 at 1418. Plaintiff submitted a second Inmate Request to Dr. Lupis, dated February 12, 2022, stating that he had lost weight and had other problems. *Id.* at 1352. A nurse received the request the following day and immediately scheduled Plaintiff to be seen at nursing sick call. *Id.* On February 13, 2022, Plaintiff reported to the medical unit with complaints of weight loss and increased urination. *Id.* at 1379. Blood was drawn for lab tests that had previously been ordered. *Id.* After reviewing the test results, Dr. Lupis prescribed insulin injections and daily blood sugar checks that same day. *Id.* at 1378, 1376, 1369-75, 1363-66.

The Second Circuit has long held that inmates are not entitled to the treatment of their choice, *see Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986), and that a mere disagreement over appropriate treatment does not support an Eighth Amendment violation unless the treatment provided is not adequate. *See Chance*, 143 F.3d at 703.

Dr. Lupis stated that he discontinued the insulin injections because Plaintiff's blood sugar levels were controlled by his diet alone. Plaintiff provides no evidence suggesting that type 2 diabetes can never be controlled by diet alone or that attempting to do so is not an acceptable medical practice. Thus, Dr. Lupis' decision was an exercise of medical judgment that does not constitute an Eighth Amendment violation. *See Nails v. Laplante*, 596 F. Supp. 2d 475, (D. Conn. 2009) ("The judgment of prison doctors is presumed valid unless the prisoner provides evidence that the decision was 'such a substantial departure from accepted

professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment.'") (citation omitted).

Although Plaintiff stated in his HSAR that he submitted four Inmate Requests asking to be seen by Dr. Lupis for this issue, only the two requests noted above are included in Plaintiff's voluminous medical file. Plaintiff does not submit copies of any other requests or present any evidence showing that, even if the requests existed, Dr. Lupis saw them. The fact that a nurse responded to the February 12, 2022 request addressed to Dr. Lupis suggests that such requests are reviewed by nursing staff and not the person to whom they are directed.

The evidence of record shows that in response to the request citing symptoms that was received, Plaintiff was immediately seen, and Dr. Lupis re-ordered the insulin injections the same day. The evidence shows, therefore, that as soon as Dr. Lupis was aware that the treatment was not working, he returned to the former treatment, *i.e.*, the insulin injections. Dr. Lupis' actions do not demonstrate that he discontinued the insulin injections intentionally to punish Plaintiff. The record evidence demonstrates a disagreement over treatment which is not cognizable under section 1983. Defendant's Motion for Summary Judgment is granted on the deliberate indifference claim regarding discontinuing insulin injections.

The Court also notes that, even if Plaintiff's claim regarding prescription of lisinopril had been properly exhausted, the claim would be subject to dismissal as a disagreement over treatment. The record contains evidence showing that Dr. Lupis prescribed lisinopril and metoprolol because they were recommended by Plaintiff's nephrologist. *See* Doc. No. 26 at 490 (Dr. Lupis responded to Plaintiff's September 6, 2022 Inmate Request that he had prescribed medications recommended by Plaintiff's nephrologist for his kidney disease); 1453-57 (a report from the nephrologist dated December 1, 2021, questioning an earlier discontinuance of

lisinopril); 1922 (a note from the nephrologist dated June 21, 2021 stating that Plaintiff's hypertension was being managed with lisinopril and metoprolol). Thus, the issue is a disagreement about treatment between Plaintiff's nephrologist and the doctor who treated his duodenal ulcer.

### C.    Injunctive Relief

In his Complaint Plaintiff states that he wants a new doctor because he does not feel safe with Dr. Lupis. *See* Doc. No. 1 ¶¶ 14, 16. Plaintiff's medical records show, however, that on October 11, 2022, before he commenced this action, Plaintiff had been informed that he had been assigned a new doctor, Dr. Naqvi. *See* Doc. No. 26-1 at 420. As Plaintiff has received the requested relief, the request for injunctive relief is denied as moot.

## IV.    <u>CONCLUSION</u>

Defendant's Motion for Summary Judgment [**Doc. No. 25**] is **GRANTED**.

**SO ORDERED.**

Hartford, Connecticut
April 1, 2024

 s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge